## LINSLEY *against* BUSHNELL.

15   225
71   378

*A* left his cart, filled with wood, by the side of the fence within the highway, before his homestead, in the evening ; and the next morning, the cart was found in the travelled path, about five rods distant from the place where it was left, upset, lying on one side, and the wood by it, constituting together a dangerous obstruction in the road. By whom, or by what agency, this was done, did not appear ; but *A*, knowing the situation of his property, and having a reasonable opportunity to remove it, suffered it to remain there two or three days, when *B*, travelling along the highway in the night, in a one-horse wagon, drove accidentally upon the cart and wood, without previously

(*a*) For what reason, the reporter did not learn : he might have been consulted in the cause, while at the bar.

*New-Haven,*
July, 1842.

Linsley
*v.*
Bushnell.

discovering them, by reason of which he was violently thrown from his wagon, and severely and dangerously injured. In an action on the case, brought by *B* against *A*, to recover damages for this injury, it was held, 1. that the property in question, notwithstanding its removal, continued to be legally in the possession, and under the controul, of *A*; 2. that *A*, having knowingly and willingly permitted his property to remain where it was so placed, was liable to *B* for the injury he sustained thereby; 3. that if the obstruction was effected, by a trespasser, who was unknown to *A*, this circumstance would not change or modify *A's* duties and responsibilities in the case.

There is no distinction between animate and inanimate property, or between personal and real estate, with respect to the liability of the owner, for injuries produced by its instrumentality.

Where it was alleged, in one count of the declaration, that the defendant wrongfully placed, and caused to be placed, ten logs of wood and an ox-cart in the highway, and wrongfully kept and continued, and negligently and wrongfully permitted the same to remain therein; and in another count, that the defendant knowingly and wrongfully kept and continued said cart and logs, and knowingly and wrongfully permitted them to be kept and continued, and wrongfully and injuriously left them in and upon the travelled path of the highway—thus substantially charging, in both counts, not only that the defendant placed the cart and logs upon the travelled road, but also that he wrongfully and negligently permitted them to remain and be kept there; and the facts proved, were those above stated; it was held, that the declaration was sustained by the proof.

Where the plaintiff, in such action, introduced a witness, who testified, that the defendant, after the plaintiff received the injury complained of, said, "I did not mean to remove the cart and wood, until somebody got injured, and then make known who put them into the travelled road;" and afterwards said, "what would you do? I am provoked every day—I won't touch the wood, if half the town runs into it and gets killed;" it was held, that such testimony was admissible, as it conduced to prove, that the defendant knew the situation of the cart and wood; that he recognized them as his own, and had not abandoned them, or resigned his claim to any trespasser; that he had a reasonable time to remove them, but purposely permitted them to remain; and as it furnished, also, strong evidence of the recklessness of the defendant, and might thus legitimately affect the question of damages in the case.

Where the judge, in his charge to the jury, in such action, instructed them, that in estimating the damages, they had a right to take into consideration the necessary trouble and expenses of the plaintiff in the prosecution of the action; it was held, that such charge was correct.

Tᴀɪꜱ was an action on the case, in two counts.

In the first count, the plaintiff alleged, that the defendant, on the 20th of *October*, 1840, wrongfully and unjustly put, and caused to be put and placed, divers, to wit, ten large logs of wood, and a large ox-cart, in the public highway in *Branford*, and wrongfully and injuriously kept and continued, and negligently and wrongfully permitted the same to remain therein, and in the usually travelled path thereof, during

the space of three days and three nights, to wit, from the 17th to the 20th of *October*, 1840, inclusive, without placing, during any part of the night, any light or signal at or near such logs and cart, to denote that the same were there ; that in consequence of said negligence and improper conduct of the defendant, the plaintiff, in the night of the 20th of *October*, 1840, at *Branford*, passing in a wagon in and through said highway, and in and through the usually travelled path thereof, was accidentally driven upon and against said logs and cart ; and said wagon was thereby, then and there, overturned, and the plaintiff was thereby thrown, with great violence, out of said wagon upon said logs and cart, and upon the ground and stones of said highway ; by means whereof, the plaintiff, then and there, was greatly hurt and wounded, and has so remained from that time to the present, his health and constitution being permanently and incurably injured ; and that the plaintiff was thereby also put to great expense and charges, amounting to 100 dollars, in endeavouring to be cured of his wounds, &c.

In the second count, the plaintiff alleged, that the defendant, on the 17th of *October* 1840, at *Branford*, wrongfully and injuriously caused to be put, and placed, and left, for a long space of time, to wit, for more than one day, in and upon the public highway, leading from near the congregational meeting-house in said *Branford*, *Westerly* towards *Branford Point*, and passing the dwelling-house and homestead of the defendant, opposite said dwelling-house and homestead of the defendant, his, the defendant's cart, loaded with divers logs, to wit, 10 logs of his the defendant's wood ; said cart then and there having no team or animals attached to the same ; and while said cart, so loaded, was so wrongfully and unjustly placed and left in and upon said public highway, to wit, on the 17th of *October*, 1840, said cart and said logs loaded therein, were, by the negligence and permission of the defendant, then and there wrongfully and unjustly caused to be overthrown in and upon the usually travelled path of said public highway ; said cart and logs being then and there near to each other, in said usually travelled path, and greatly encumbering and obstructing the same : all of which was then and there well known to the defendant ; but the defendant, though duly informed of the premises, and of the great dan-

*New-Haven*, July, 1842.

Linsley *v.* Bushnell.

HARVARD LAW LIBRARY

ger thereby incurred, by all good citizens, who might have occasion to travel upon said highway, then and there knowingly, wrongfully and injuriously kept and continued, and then and there negligently, knowingly and wrongfully permitted to be there kept and continued, and then and there negligently, wrongfully and injuriously left in and upon said usually travelled path, the said property of the defendant, to wit, said cart and logs so overthrown, for a long space of time, to wit, for the space of three days and three nights, from the 17th to the 20th day of *October*, 1840, inclusive ; and particularly, during the night time of the day last aforesaid, without placing, during any part of that night, a signal at or near the said cart and logs, to denote that the same were there : by means of all which negligence and improper conduct of the defendant, the plaintiff, on said 20th of *October*, 1840, passing in a certain wagon upon said public highway, through and upon the usually travelled path thereof, was accidentally driven upon and against said logs and cart, and the plaintiff was thereby, with great violence and force, thrown out of said wagon upon said logs and cart of the defendant, and upon the ground and stones of said highway ; by means whereof, the plaintiff was greatly and dangerously hurt, wounded, &c. [as in the first count.]

The cause was tried at *New-Haven*, *January* term, 1842, before *Church*, J.

On *Saturday* evening, the 17th of *October*, 1840, the defendant left a load of wood on his cart, without any team attached thereto, standing within the limits of the public highway, and within about one foot of the fence on one side of it, and within a foot or eighteen inches of a beaten foot-path on the other, near his homestead in the town of *Branford*. The whole width of the highway there, was about 42 feet between the fences. The cart remained standing where the defendant left it, until the *Sunday* or *Monday* night following. The next morning, it was found at a distance of about five rods from the place where it was left by the defendant, below his premises, and upset in the travelled path of the highway, lying on its side, with one wheel up ; and the wood and timber left upon it by the defendant, was lying in the travelled part of the highway. The cart and wood, before they were taken from the place where the defendant left them, were his

property, and subject to his entire controul.   When lying in *New-Haven*, July, 1842. the travelled cart-path, they constituted a dangerous obstruc-

Linsley *v.* Bushnell.

tion, and were a nuisance.   There was no evidence as to the manner in which, nor by whom, they were removed from the place where they had been left by the defendant, and drawn and upset in the travelled path.   The plaintiff, while travelling along the highway in the night of *Tuesday*, the 20th of *October*, when it was very dark, in a one-horse wagon, drove accidentally upon the cart and wood, without previously discovering them ; by reason of which he was violently thrown from his wagon, and severely and dangerously injured.   On the morning next after the night when the cart and wood were so removed and upset, the defendant saw them, and knew the situation in which they were lying.

Among other testimony, the plaintiff offered *John Collins*, who testified, that immediately after the plaintiff received the injury complained of, the defendant said to the witness : " I did not mean to remove the cart and wood, until sombody got hurt, and then make known who put them into the travelled road."   The defendant afterwards said to him : " What would you do ? I am provoked every day—I won't touch the wood, if half *Branford* runs into it and gets killed."   He also said, " I know well who did it."   This evidence was objected to, by the defendant ; but the court admitted it.

The defendant claimed to have proved, that after the cart and wood had been removed and upset in the travelled path, he had abandoned and relinquished them as his property, and had given immediate or reasonable notice to the select-men of the town of *Branford*, of the situation of such cart and wood, and requested them to remove them as a public nuis-ance.   This the plaintiff denied, and introduced evidence to prove, that the defendant did not, at any time, give such notice to the select-men, but at all times recognised and claimed the cart and wood as his own ; and that, with his own team, he afterwards removed them into his yard, and has ever since retained them as his property.

The plaintiff claimed from the evidence in the cause, that the cart and wood were placed in the travelled path, either by the defendant himself, or by his procurement, or were con-tinued there by him, wrongfully and intentionally, as a dan-gerous obstruction and a nuisance ; and if so, the plaintiff

was entitled to recover, under the first count of his declaration. He also claimed, that if the cart and wood were wrongfully, and without the knowledge of the defendant, removed from the place where they were left, on *Saturday* night, and upset in the travelled path, by a trespasser ; yet that the defendant had been guilty of culpable negligence, in permitting them to remain an unreasonable time upon the travelled part of the highway, after notice thereof, without removing them, and while he continued to own and claim them as his property ; and if so, that the plaintiff had right to recover, upon the second count of his declaration. The defendant denied his liability for the consequences of any tortious removal of the cart and wood, and upsetting thereof, by a stranger. On this point, thus presented, the court instructed the jury in conformity to the defendant's claim.

The defendant then claimed from the evidence in the cause, that the cart and wood were tortiously taken from the place where he had left them, by some trespasser unknown to him, and by such trespasser upset and left upon the travelled path, so as to encumber it and endanger the public travel ; and if so, that by law he, the defendant, had a right to suffer such cart and wood there to remain, without any interference by him, and to pursue his remedy against the trespasser for the value thereof ; and that if, while the cart and wood so remained, without any act of the defendant, the owner, in relation thereto, although he knew the situation thereof, yet the law did not impose upon him, by reason of his being such owner, or by reason of his knowledge of the situation of the property, any obligation to remove it, or any responsibility for damages, which were incurred thereby, but that such obligation and responsibility rested solely upon the person or persons by whom such trespass was committed, or on the town whose duty it was to repair the highway ; and the defendant prayed the court so to instruct the jury. But the court did not so instruct the jury.

The defendant further claimed, that if the law was otherwise, yet upon the declaration of the plaintiff, there could be no recovery by him, upon either count therein, unless the defendant had, by some act or misconduct of his, caused the obstruction complained of ; and that for mere negligence or refusal to remove the cart and wood, after reasonable notice

of their situation, the defendant was not liable, under the declaration in this case; and claimed that the court should so instruct the jury. But the court did not so instruct the jury.

*New-Haven,*
July, 1842.

Linsley
*v.*
Bushnell.

The court instructed the jury as follows: "If you believe from the evidence, that the cart and wood were placed in the travelled path of the highway, by the agency of the defendant; or if the defendant, being the owner thereof, and having the controul thereof, refused or neglected to remove them, within a reasonable time after he had notice of their situation, and that they endangered the safety of travellers, he is liable under this declaration, if you also believe, that the injury of which the plaintiff complains was occasioned by such obstructions, and without negligence on his part, unless the defendant, before the injury was sustained, really relinquished and abandoned the cart and wood as his property. If you believe, upon these principles, that the plaintiff ought to recover, the law has fixed no definite rule of damages; but the plaintiff is entitled, in such case, to recover a fair and reasonable indemnity for the injury he has received, in his person and his health, so far as you can, as reasonable men, acting without vindictive feelings, ascertain the amount; and in estimating damages, you have a right to make good to the plaintiff his trouble and expenses in prosecuting this action."

The jury returned a verdict for the plaintiff to recover 900 dollars damages. The defendant moved for a new trial, on the ground that the court erred, in admitting the testimony of *Collins,* and in refusing to charge the jury as claimed by the defendant, and in giving the direction which was given.

*Baldwin* and *Kimberly,* in support of the motion, stated the following positions or remarks, as preliminary to a discussion of the main points in the case, *viz.* 1. that it is immaterial whether the cart, as left by the defendant adjoining his own premises, was a nuisance or not, as the injury complained of, was in no respect the consequence of that act: 2. that it is conceded, that the defendant was not instrumental in removing the cart to the place where the injury happened: 3. that the cart was so removed, by some tort-feasor, who is responsible for the injury, and not by the elements or by mere accident: 4. that the property was tortiously taken out of

the *possession* of the defendant: 5. that it was never again in the possession, use or enjoyment of the defendant, until *after the injury :* 6. that the defendant notified the selectmen of the situation of the property, and requested them to remove it as a nuisance : 7. that the plaintiff has ample remedy, first, against the person, by whose trespass the injury was occasioned; and secondly, against the town, whose duty it was to keep the highway in repair.   They then contended,

1. That it is essential to the right of action, that the injury sustained be the necessary consequence of the defendant's misconduct, and not produced by the wrongful act of another. 1 *Com. Dig.* 274. n. (*h*) by *Hammond.*   Mere ownership of inanimate personal property, never subjects the owner for injuries occasioned by it, as an instrument in the hands of another.   He alone is responsible, who so uses it.   The rule in regard to real and personal estate, is different.   1 *Saund. Pl. & Ev.* 430.   So also in regard to animate personal property. Animals have naturally the capacity to do mischief.   This, so far as it is known to the owner, justly renders him responsible for their acts, according to their natural propensities.   But for mischief done by such property, not according to the natural propensity of the animal, the owner is not responsible. *Mason* v. *Keeling,* 1 *Ld. Raym.* 606-608.   Nor for such acts, when tortiously taken from his possession, by a stranger. 1 *Chitt. Pl.* 94.

2. That the facts submitted to the jury in this case, no more support the allegations in this declaration, than they would an indictment for a nuisance.   *The King* v. *Watts,* 1 *Esp. Ca.* 675.   *Mc Manus* v. *Crickett,* 1 *East,* 106.   *Fitzsimons* v. *Inglis,* 5 *Taun.* 534. 538.

3. That the court erred in admitting the testimony of *Collins,* as to the declarations of the defendant, *after* the injury. These declarations constituted no part of the *res gesta.*

4. That the court erred in authorising the jury to give damages for the trouble and expenses incurred by the plaintiff in prosecuting his suit, in addition to the damages sustained by the injury complained of.   *Barnard* & al. v. *Poor,* 21 *Pick.* 378.   *Lincoln* v. *The Saratoga and Schenectady Rail-Road Co.* 23 *Wend.* 425.   The costs are intended to compensate the party for his trouble and expenses in prosecuting

the suit, if not in all cases, certainly in a case of mere neg- New-Haven, July, 1842.
ligence, without malice.

Linsley
v.
Bushnell.

*R. I. Ingersoll* and *C. A. Ingersoll*, contra, contended, 1.
That where a nuisance is erected or continued, by the prop-
erty of an individual, whether that property be animate or in-
animate, real or personal, and during the continuance of that
nuisance, he claims and exercises acts of ownership over it,
and has the controul of it, having never abandoned it, he is
liable for an injury occasioned by such nuisance, especially
when he refuses or neglects to remove it, after reasonable no-
tice.    A man must take such care of property owned by him
and subject to his controul, that another will not be exposed
to injury by it: *Sic utere tuo ut alienum non lædas.*    Nor is it
necessary to make the defendant liable, that he should have
done any positive act: if he leave undone that which he
ought to do, and an injury ensues, he must answer for it.    1
*Chitt. Plead.* 95. *Com. Dig. tit.* Action upon the case for a
Nuisance, B.    *Leslie* v. *Pounds*, 4 *Taun.* 649.    *Bul. N. P.*
25, 75.    *Dixon* v. *Bell*, 1 *Stark. Ca.* 287.    *Weld* v. *The Gas
Light Company*, 1 *Stark. Ca.* 189.    *Waterman* v. *Robinson*,
1 *Bing.* 213.

2. That the defendant is liable for the culpable negligence
of which he has been guilty, under the declaration in this
case.    In the first place, it appears by the motion, that all
the allegations set up in the declaration, and of which the
plaintiff complains as causing the injury inflicted upon him,
were proved and admitted.    Secondly, if they were not all
proved and admitted, enough of them were found by the jury,
under the charge of the court, to entitle the plaintiff to re-
cover.    1 *Chitt. Plead.* 428. 263.    *Bromfield* v. *Jones*, 4 *B.
& Cres.* 380. per *Holroyd*, J.    *Leslie* v. *Pounds*, 4 *Taun.* 649.
*Panton* v. *Holland*, 17 *Johns. Rep.* 92.

3. That the testimony of *Collins* was admissible to prove,
first, that the defendant knew that the cart and wood, before
the accident, were in the travelled path, and a nuisance, and
that he had reasonable notice thereof.    Secondly, that the de-
fendant had not abandoned the property, but claimed it as his
own, and exercised acts of ownership over it.    Thirdly, to
show that the injury inflicted on the plaintiff was caused ma-
liciously, and thus to enhance the damages.    *Hall* v. *The*

*Connecticut River Steam-Boat Company,* 13 *Conn. Rep.* 320.

4. That the charge of the court regarding damages, does not entitle the defendant to a new trial. In the first place, this was not a point made at the trial. The defendant did not claim a different rule, or ask the court to instruct the jury differently. But secondly, the charge was right. If malice in the defendant was necessary to entitle the plaintiff to an actual indemnity, (so far as a sum of money could afford it,) there was no want of that ingredient here; as the defendant *knew* the danger. But negligence alone is sufficient to justify the charge; which is in accordance with the general, if not the invariable and immemorial, practice, in such cases. The costs are notoriously insufficient to reimburse the expenses of a trial.

CHURCH, J.   1. Questions of minor importance have been discussed upon this motion, which it may be well to dispose of, before considering the leading principle of the case.

First, it has been objected, that the testimony of *Collins* was improperly admitted. *Collins* testified, that, immediately after the plaintiff received the injury, the defendant said, " I did not mean to remove the cart and wood, until some body got injured, and then make known who put them into the travelled road." And afterwards, he said, " What would you do? I am provoked every day. I won't touch the wood, if half *Branford* runs into it, and gets killed, &c." This testimony was admissible, for several reasons. It conduced to prove, that the defendant knew the situation of the cart and wood;—that he recognised them as his own, and had not abandoned them, or resigned his claim to any trespasser;— that he had a reasonable time to remove them, but purposely permitted them to remain;—and also, it furnished strong evidence of the recklessness of the defendant; and if it did not prove any special malice towards this plaintiff, it might legitimately affect the question of damages in the case.   *Hall* v. *Connecticut River Steam-Boat Company,* 13 *Conn. Rep.* 319. *Sears* v. *Lyons,* 2 *Stark. Ca.* 317.   *Treat* v. *Barber,* 7 *Conn. Rep.* 174.   *Churchill* v. *Watson,* 5 *Day,* 140.   *Bracebridge* v. *Oxford,* 2 *Mau. & Sel.* 77.   *Merest* v. *Harvey,* 5 *Taun.* 442.

Secondly, it was objected that the facts claimed by the

*New-Haven,*
July, 1842.
———
Linsley
*v.*
Bushnell.

plaintiff, do not sustain either count in his declaration. In the first count, it is alleged, that the defendant " wrongfully and unjustly put and placed, and caused to be put and placed, divers, to wit, ten logs of wood, and a large ox cart, in the said highway ; and wrongfully and injuriously *kept and continued,* and *negligently and wrongfully permitted* the same to remain therein," &c. In the second count, it is alleged, that the defendant, " wrongfully and injuriously, kept and continued, and then and there negligently, knowingly and wrongfully permitted to be there kept and continued, and wrongfully and injuriously left in and upon said usually travelled path &c., the said cart and logs," &c. The allegations in both counts substantially charge, not only that the defendant placed the cart and logs upon the travelled road, but also, that he wrongfully and negligently permitted them to remain and be kept there. We are strongly inclined to the opinion, that, in the absence of all proof that these incumbrances were placed upon the public highway, by any other person, the facts claimed by the plaintiff, would conduce, in some plausible degree, to prove, that they were placed there, by the defendant himself. At any rate, they prove conclusively the other charges, that the defendant wrongfully and negligently permitted them to remain and be kept there. *Leslie* v. *Pounds,* 4 *Taun.* 649.

Thirdly, an objection is made to the charge of the judge in relation to the principle which might have influence in the assessment of damages. And cases from *Massachusetts* and *New-York,* are relied upon in support of this objection. Whatever may have been formerly, or may be now, the practice of the courts of other states upon this subject, we are certain our own practice has been uniformly and immemorially such as the judge recognised in his charge in this case. *Nolumus leges mutare.* We have no disposition to discard our own usages in this respect. We believe them to be founded in the highest equity, and sanctioned by the clearest principles. The judge informed the jury, that in estimating the damages, they had a right to take into consideration the necessary trouble and expenses of the plaintiff, in the prosecution of this action.

In actions of this character, there is no rule of damages fixed by law, as in cases of contract, trover, &c. The object

*New-Haven,*
*July, 1842.*

Linsley
*v.*
Bushnell.

is the satisfaction and remuneration for a personal injury, which is not capable of an exact cash valuation. The circumstances of aggravation or mitigation,—the bodily pain,—the mental anguish,—the injury to the plaintiff's business and means of livelihood, past and prospective;—all these and many other circumstances may be taken into consideration, by the jury, in guiding their discretion in assessing damages for a wanton personal injury. But these are not all, that go to make up the amount of damage sustained. The bill of the surgeon, and other pecuniary charges to which the plaintiff has been necessarily subjected, by the misconduct of the defendant, are equally proper subjects of consideration. And shall a defendant, who has refused redress for an unprovoked and severe personal injury, and thus driven the plaintiff to seek redress in the courts of law, be permitted to say, that the trouble and expense of the remedy was unnecessary, and was not the necessary result of his own acts, connected with his refusal to do justice ?

There is no principle better established, and no practice more universal, than that vindictive damages, or smart money, may be, and is, awarded, by the verdicts of juries, in cases of wanton or malicious injuries, and whether the form of the action be trespass or case. We refer to the authorities before cited, and also to *Denison* v. *Hyde,* 6 *Conn. Rep.* 578. *Woert* v. *Jenkins,* 14 *Johns. Rep.* 352. *Merills* v. *Tariff Manufacturing Company,* 10 *Conn. Rep.* 384. *Edwards* v. *Beach,* 3 *Day,* 447. In this last case, *Daggett,* in argument for the defendant, admits, that where an important right is in question, in an action of trespass, " the court have given damages to indemnify the party for the expense of establishing it." The argument in opposition to the doctrine of the charge, is substantially founded upon the assumed principle, that the defendant cannot be subjected in a greater sum in damages than the plaintiff has actually sustained. But every case in which the recovery of vindictive damages has been justified, stands opposed to this argument. And we cannot comprehend the force of the reasoning, which will admit the right of a plaintiff to recover, as vindictive damages, beyond the amount of injury confessedly incurred, and in case of an act and injury equally wanton and wilfully committed or permitted, will deny to him a right to recover an actual indemnity for the expense

to which the defendant's misconduct has subjected him. In the cases to which we have been referred, in other states, as deciding a different principle, the courts seem to have assumed, that the taxable costs of the plaintiff are his only legitimate compensation for the expense incurred. If taxable costs are presumed to be equivalent to actual, necessary charges, as a *matter of law;* every client knows, as a *matter of fact,* they are not. And legal fictions should never be permitted to work injustice. This court has repudiated this notion. It was formerly holden in *England,* and perhaps is so considered now, that no action would lie for the injury sustained by the prosecution of a vexatious civil action, when there has been no arrest or imprisonment; because the costs recovered, compensated for that injury. But this court, in the case of *Whipple* v. *Fuller,* 11 *Conn. Rep.* 582. hold a contrary doctrine, and say, " we cannot, at this day, shut our eyes to the fact known by every body, that taxable costs afford a very partial and inadequate remuneration for the necessary expenses of defending an unfounded suit."

2. But the question intended by the parties more particularly to be discussed and considered, arises from that part of the charge of the judge which relates to the liability of the defendant for the injury sustained by this plaintiff.

Conceding that this obstruction was not placed in the public highway, by the agency of the defendant; the question is, whether upon the facts appearing on this motion and found by the jury, the defendant is liable at all ? It is perhaps material, that it does not appear how, nor by what agency, the cart and wood of the defendant were removed from the road-side, where he left them; nor by what instrumentality they were placed upon the travelled part of the highway, where they occasioned the injury to the plaintiff; because much of the argument for the defence has proceeded upon the fact, as if it had been conceded, that some trespasser, without the defendant's knowledge, had done the act. Let this be conceded, and still we are not persuaded that it is material, because the question, after all, will recur,—what was the defendant's legal duty, after he had knowledge of the situation of his property, and after he had reasonable opportunity to remove it ?

We do not think that any special property in the defend-

*New-Haven,*
July, 1842.

Linsley
*v.*
Bushnell.

HARVARD LAW LIBRARY

ant's cart and wood, became vested in any trespasser, in any such sense as to exonerate this defendant from his obligation so to use his own property as that it should not injure another. Indeed, we cannot comprehend the principle which has been urged upon us in argument, that *any right of property* is acquired, by a mere act of wanton trespass, unaccompanied by a continued possession, and not followed by a judgment against the trespasser for its value. This property, for all legal purposes, was in the possession of the defendant; and he alone could maintain an action for it, founded upon a property right. *Com. Dig. tit.* Biens. E. *Rosc. Ev.* 398.

Nor would it make any difference in the result, although the trespasser, by whom the property was unlawfully placed upon the travelled road, could be discovered, and although the plaintiff could sustain an action against him. The defendant's duties and obligations could not be varied, nor his responsibilities discharged, by this circumstance. An action will as well lie against him who continues a nuisance, as against him who erected it. And the cases are numerous, in which a plaintiff is permitted to make his election to proceed against one of several who may be liable. Of course, it cannot be material to the plaintiff's right of recovery, nor can it modify or change the defendant's liability, whether these obstructions were placed upon the highway, by the force of the elements, or by human agency. The question will still recur, what was the defendant's duty, after the situation of his property was made known to him?

*Sic utere tuo ut alienum non lædas,* is a maxim expressive of an important and salutary principle, which we think applicable to this case, and to the legal obligations of this defendant. Nor is it less applicable, if it be conceded, that the defendant has done nothing more than knowingly and willingly to permit his property so to remain as to endanger others. He thus made and selected the public highway as its place of deposit, and is equally responsible, as if he had placed it there, by his own direct agency.

It has been very properly admitted, by the defendant, in argument, that the owner of beasts, who knows their dangerous propensities, is liable for the injurious consequences of such propensities, unless he uses reasonable efforts to restrain them. Thus, the owners of horses and cattle accustomed to

wander, and of dogs accustomed to bite, are liable; and we perceive no essential distinction between such cases and the present. Here, the defendant as well knew, that his property, placed in the center of the public travelled road, would endanger the safety of travellers, as the owner of a ravenous dog knows, that the animal let loose, will do the same thing. There is no good sense in the distinction, which has been attempted to be made, between animate and inanimate property, in this respect. Nor can it make an essential difference, whether the injury be occasioned by the peculiar condition or situation of real or personal estate. If the owner of a weak and tottering wall, permits it to overhang a public street, without sufficient shores; if the owner of a gate permits it to stand open across the side-walk, at night, even if thrown open by a trespasser; if the owner of land, upon which a nuisance has been erected, by a stranger, permits it to remain; these are all cases, in which it is admitted, there would remain a legal responsibility upon such owners. But it is said, it is by reason of their possession of the premises. In the present case, as we have seen, the possession of this defendant was equally certain, and his controul over the property equally absolute, as in the cases stated.

The burden of the defendant's claim has been, that, as he did not place the property in the public highway, he was under no legal obligation to remove it. Let this position be tested, by a few more cases, in addition to those already stated. A stranger, without the knowledge of the owner, unlooses a furious dog from his chain, or a tiger from his cage;—are no efforts necessary, on the part of the owner, to restrain them, after he is informed of their situation? A wrong-doer unfastens the stage-horses in a public street; is the owner justified in permitting them to remain loose, and thereby endanger the lives of the passengers within, and the travellers without?

This is not a case, where property has been taken wrongfully from the owner, and placed beyond his controul; nor a case where he can be considered as having abandoned it, and as having no longer any possession of it. This defendant at all times asserted his ownership of the property; and after the injury was sustained, removed it into his enclosure and reclaimed it to his use. It is therefore essentially unlike the

New-Haven,
July, 1842.

Linsley
v.
Bushnell.

HARVARD LAW LIBRARY

case of *The King* v. *Watts*, 2 *Esp. Ca.* 676. In that case, the defendant's vessel was a complete wreck, and not worth raising. It was considered as abandoned, by the defendant, and therefore, he was under no obligation to remove it.

If the foregoing principles be correct, it follows, that the notice given by the defendant to the select-men of *Branford* to remove the obstruction, was immaterial.

No new trial is advised.

In this opinion WILLIAMS, Ch. J. and STORRS and HINMAN, Js. concurred.

WAITE, J. In the opinion expressed by the court, in the case, I fully concur, with the exception of that part relating to damages. The judge, I presume, followed a practice, which, it is said, has prevailed, to some extent, of allowing the jury, in trespass and other actions sounding in damages, to include, in their assessment of damages, the expenses of the plaintiff beyond his taxable costs. That doctrine has never before received the sanction of this court; and, as it is believed, has not uniformly been recognised on the circuit. If it is unsound in principle, it is within the power of this court to put it right, as has been done by other courts, in relation to this precise question, and by this and other courts, in like cases. *Barnard* v. *Poor*, 21 *Pick*. 382. *Lincoln* v. *The Saratoga and Schenectady Rail-Road Co.* 23 *Wend.* 425. *Dean* v. *Mason*, 4 *Conn. Rep.* 428. *Parkinson* v. *Lee*, 2 *East*, 322. It has established no rule of property, by the change of which any title can be shaken.

Now, it is very clear, that however groundless may have been the plaintiff's suit, and however great the defendant's expenses, the latter, if he prevailed, could recover no more than his taxable costs. Why then, if the plaintiff prevails, shall he be allowed to recover more on account of his expenses? And why apply a different rule to one party, from what is applied to the other? Surely, it can be no worse to make a groundless defence, than to prosecute a groundless suit. Besides, it must be conceded, that such expenses can be included under the head of damages, only *in few cases*. In all others, the plaintiff must look for remuneration, on account of them, to his costs.

The true rule upon this subject, is, for the plaintiff, in all cases, to look, not to his damages, but to his costs, for his expenses in prosecuting the suit. If the costs are adequate, he ought not to recover more : if inadequate, the remedy is with the legislature. It is for them to authorise the allowance of greater, and not for the court or jury. Besides, if the jury have a right to assess damages, on account of the expenses of a party in carrying on his suit, they ought to be informed what those expenses actually were. The proper evidence ought to be furnished of the amount. Such testimony, upon such a subject, and for such a purpose, it is believed, was never heard in a court of justice. No case can be found, sustaining such a course.

But this doctrine is not only unsupported by authority, but directly against it. This question recently came before the supreme court of *Massachusetts.* They say, that " it is now well settled, that even in an action of trespass, or other action sounding in damages, the counsel fees and other expenses in prosecuting the suit, not included in the taxed costs, cannot be taken into consideration, in assessing damages ; and if such costs were included by a jury, it would be irregular and erroneous." *Barnard* v. *Poor,* 21 *Pick.* 382. The question has still more recently been brought for consideration before the supreme court of the state of *New-York.* They fully recognise the doctrine laid down in the case of *Barnard* v. *Poor,* and say, that the point there adjudged, they consider founded on principle. *Lincoln* v. *Saratoga and Schenectady Rail-Road Co.* 23 *Wend.* 425. 435.

Believing, as I do, that the instruction given to the jury, that in estimating damages, they had a right to make good to the plaintiff his trouble and expenses in prosecuting his action, is unsound in principle, against the authorities, and opposed by all the analogies of our law, I cannot give it my approbation.

New trial not to be granted.