## DAVID S. DIBBLE *vs.* AMOS MORRIS.

A paper purporting to be a copy of a record of a court of probate, is not admissible in evidence as such a copy, unless certified by the clerk of the court of probate, or, in case of his absence or inability, examined and sworn to by a credible witness,—even though it be certified as a true copy by the judge of probate in his official capacity.

An appointment to the office of clerk of a court of probate continues the appointee in office until he resigns, or is removed, or superseded by the appointment of another person to the office. He is the clerk of the court, and not of the particular judge by whom he is appointed; and, upon the accession of a new judge, there need not be either a re-appointment of the clerk or a new administration to him of his official oath.

Therefore, where it appeared that A had been once appointed clerk of a court of probate, that he was still living within the same probate district in which he had so been appointed, that he had never formally resigned and had never been formally removed from office and that no person had been appointed in his place,—it was held, that although for the period of six years last past, he had never acted as clerk or claimed to be such, he was still clerk of that court.

By " credible witnesses " mentioned in the statute, authorized in certain cases to verify copies of record, are intended witnesses giving testimony under the sanction of the witness' oath, and subject to cross-examination in regard to the existence of the record and the accuracy of the copy.

An omission, on the part of the trustee of an estate assigned for the benefit of creditors, to cause to be inventoried and appraised portions of the estate which the law requires to be inventoried and appraised, does not render the assignment in contemplation of law fraudulent and void. Such omission is an indication of fraud, but not a conclusive one.

If, after an insolvent debtor has made an assignment to a trustee under the insolvent act of 1853, the assignor retains possession of the assigned estate with the assent of the trustee, using it as his own, this fact raises a presumption that the assignment was colorable and fraudulent; but this presumption is not conclusive as matter of law, and may be repelled by proof that the trustee has complied with the requirements of the law, and that the acts of the assignor, while so retaining possession of the estate and using it, were done under the direction of the trustee, and for the purpose of carrying out the proper objects of the assignment.

In actions sounding in tort, if it appear that the injury complained of was inflicted wantonly or maliciously, the jury are not limited, in assessing damages, to a mere compensation for the actual loss or injury, but may give exemplary or vindictive damages in view of the degree of malice or wantonness evinced by the defendant, and may take into consideration the plaintiff's expenses in the prosecution of his suit; but when the injury does not appear to have been wanton or malicious, vindictive or exemplary damages ought not to be given, and the jury ought not to consider the expenses of the plaintiff in the prosecution of his suit.

ACTION of trespass, tried to the jury, upon the general issue, with notice of the special matters of defence hereinafter stated.

The plaintiff brought the suit as trustee of Ezra B. Beebe, an assigning debtor, to recover for the seizure and conversion, by the defendant, of a yoke of cattle, alleged in the plaintiff's declaration to have been in his possession as such trustee at the time of the seizure. The value of the property was laid at $150. The defendant claimed that the property in question was, at the time of the taking thereof, the property of Beebe; and that it was taken by the defendant lawfully, by a writ of attachment in his favor against Beebe. The property originally belonged to Beebe. The plaintiff claimed to have acquired a title to it, as trustee, prior to the seizure of it by the defendant, by virtue of an assignment duly made to him by Beebe under the insolvent act of 1853.

For the purpose of proving that such an assignment had been made, that the plaintiff had accepted the trust, that appraisers and commissioners upon the assigned estate had been appointed, that an inventory of the estate had been made, and that the commissioners had presented their report to the court of probate for the district of Brookfield, to which court the settlement of the estate appertained, the plaintiff read in evidence certain papers purporting to be copies of the records of the court of probate and setting forth the several facts which the plaintiff claimed to prove by them. The papers were in due form as copies of record, except that they were respectively certified as follows, and not otherwise, viz.: " The foregoing and within is a true copy of record. Certified by me, Ebenezer Blackman, Judge." Upon the reading of these papers the defendant requested that they might be received subject to objection. The plaintiff assented, and the trial proceeded. After the evidence was closed and the counsel for the plaintiff had addressed the jury, the defendant's counsel, in his opening argument, objected to the admission of the supposed copies as evidence, on the ground that they were not otherwise certified from record than by "Ebenezer Blackman, Judge." At the con-

clusion of this argument the plaintiff, with the permission of the court, offered said Blackman as a witness, who testified " that he was judge of the court of probate for the district of Brookfield ; that at the time of the assignment he had not, nor had he now, any clerk of said court; that he was first appointed in the year 1850, and had held the office ever since; that at the time of his first appointment he appointed Thomas Taylor clerk of said court, who was duly sworn and whose appointment was recorded ; that he, Taylor, was still living, and that he was and had been ever since his appointment, a resident of the district of Brookfield; that he discharged the duties of clerk the first year, and since then had not performed any of the duties of the office, nor had he, since then, claimed to be clerk or to act as such, and that he had never been removed from office formally, nor had he formally resigned."

The defendant still insisted that the supposed copies should not be received in evidence, and asked the court so to decide. The court found, from the evidence of Judge Blackman, that he had no clerk, and overruled the objection of the defendant, and admitted the papers in evidence for the purpose for which they were offered, remarking at the time that the objection was a technical one, and, under all the circumstances, was taken too late to be received with much favor.

When the assignment was made, and when the inventory was presented, Beebe was residing upon the real estate embraced in the assignment, and owned and possessed certain articles of household furniture, such as are ordinarily used by persons in his condition, he being a farmer; but this furniture was not mentioned in the inventory; and no other inventory of the estate had been made, and no account of this furniture had ever been returned by the plaintiff to the court of probate. Certain corn and potatoes in the field were mentioned in the inventory, but without any estimate of value. These facts being admitted by the plaintiff, the defendant thereupon requested the court to charge the jury, that inasmuch as the plaintiff had neglected, within the time required by law, to make a true and perfect inventory and

appraisement of the estate so assigned in trust, and had neglected to embrace the household furniture in the inventory, and to estimate and appraise the value of the corn and potatoes, the assignment was, in contemplation of law, fraudulent and void.

Upon this part of the case the court charged the jury as follows: " The willful and in some cases the careless omission to inventory property assigned, is a badge of fraud and requires explanation.  If property assigned was not inventoried because it was casually forgotten or overlooked, or if its quality and value could not at the time be reasonably ascertained, or if it was omitted under a reasonable belief that the particular property ought not to be inventoried, or if their be other like reasonable excuse, the badge of fraud will be removed; and it is for the jury to say, from all the facts, whether the omission to inventory the household furniture, and to affix a price to, and ascertain the quantity of the growing crops, was attributable to these causes or either of them, or whether the omission was from willful neglect or gross carelessness."

It was admitted that from the making of the assignment until after the attachment of the property in suit, Beebe lived in the house situated on the land assigned, and took care of the assigned estate, both real and personal; but the plaintiff claimed that Beebe remained there at his request for the purpose of taking charge of the estate and of assisting the plaintiff in harvesting the crops and collecting the property to be inventoried.  The defendant claimed that while Beebe remained in possession of the property he treated it as his own, and offered to sell the oxen, and fed his cow from the hay which had been assigned and which was embraced in the inventory; and he further claimed, and it was not denied, that the hay so used had never been set out in any way to Beebe, but that it was fed out by him without any knowledge on his part or on the part of the plaintiff, of the quantity so used; but the plaintiff claimed that the keeping of the cow was to be adjusted between him and Beebe in the settlement of the matters between them, and that the

value of the hay fed to the cow was to be deducted from Beebe's pay for his labor in taking care of the assigned property. The defendant thereupon requested the court to charge the jury that, in view of the facts admitted, if they should find to be true the other facts thus claimed by the defendant, the assignment was, in law, fraudulent and void.

Upon this part of the case the court charged the jury as follows:—" The defendant insists that the whole of this transaction shows satisfactorily that Beebe was not only permitted to retain possession of this property, but that the whole proceeding was merely colorable, to keep the property from his creditors; and that Beebe did in fact treat the property as his own, deriving a benefit therefrom personal to himself. The plaintiff denies that Beebe, after the assignment, had any possession or control of the assigned property except so far as it was necessary for him to aid the plaintiff in securing the crops growing upon the land, and collecting the property to be inventoried and to be disposed of under the assignment. If the jury shall find that Beebe did retain possession of this property, after the assignment, by the assent of the trustee, using it as his own, this fact will be presumptive evidence of fraud, and the plaintiff will not be entitled to a verdict unless he repels this presumption by a proper explanation. The plaintiff claims to have done this by proving that this assignment was made under the insolvent act of this state, and that all the acts of Beebe in relation to this property were done in aid of the assignment at the plaintiff's request, and that the plaintiff has complied with the requirements of that statute; and if the jury shall find that this assignment was made under that statute, that the plaintiff has complied with all its requirements, and that all the acts of Beebe were done under the direction of the plaintiff and at his request, and in aid of and to carry out the objects of the assignment, the presumption arising from Beebe's being so in possession of the property will be repelled, unless the jury shall further find that the plaintiff permitted Beebe to treat the whole assignment as fraudulent, by holding himself out to the world as the real owner of the

assigned estate, or that he was to have some personal benefit from the property assigned; and if either of these facts should be found by the jury, the assignment is fraudulent and void, and the defendant entitled to a verdict.".

The plaintiff claimed that he was entitled to recover the value of the property with interest from the time when it was taken, together with remunerative damages, and asked the court so to charge the jury. The defendant requested the court to charge the jury that the plaintiff could recover only the value of the property with interest from the time when it was taken. Upon this point the court charged the jury that if they should find the issue for the plaintiff, they must find for him to recover such damages as were the natural and proximate consequence of the act of which he complained; and that in this case the rule would be, the value of the property taken and the interest thereon; and that it would be proper for them to take into consideration the expenses necessarily attendant upon prosecuting his claim in court.

The jury returned a verdict for the plaintiff of $225 damages. The defendant thereupon moved for a new trial for errors in the rulings and charge of the court.

*White* and *Booth*, for the defendant.

1. Copies of the proceedings of a court of record are not admissible in evidence unless authenticated in the manner required by law. Rev. Stat., tit. 1, § 130. The statute provides in what manner a court of probate shall be constituted. Rev. Stat., tit. 5, § 54. It further defines the duties of the clerks of the several courts of this state. Id., § 85. When copies are made evidence by statute the mode of authentication must be strictly pursued. *Smith* v. *United States*, 5 Pet., 292. 1 Sw. Dig., 750. The record discloses the fact that there was at the time of the certification of the copies, a clerk of the court of probate who had never been removed and who had not resigned; and the finding of the court below, in the face of the evidence, makes no difference with the fact; nor are the remarks of the court " that the objection was a technical one " and " was taken too late to be received with much favor," to be regarded as of any import-

ance, since it appears that the objection was taken when the copies were offered. The mere fact that the clerk has not officiated, furnishes no evidence that he was not still the legal clerk. It can not be objected that the rejection of this testimony invalidates the records of the court, as the clerk can still certify them.

2. The trustee did not comply with the requirements of the statute in making a true and perfect inventory of the estate, and the omission renders the proceedings, in contemplation of law, fraudulent and void. 1st. The statute expressly requires the household furniture of the debtor, whose estate is in settlement, to be embraced in the inventory. Stat. Comp. of 1854, 521. And the statute defines the duties of the court of probate in regard to the household furniture of the assigning debtor. How can the court know the value of the furniture or make the statutory orders, if the furniture is not inventoried? 2nd. It was the duty of the trustee to set some valuation upon the corn and potatoes in the field. He must make " a true and perfect inventory and appraisement of the estate." Rev. Stat., tit. 14, § 71. 3rd. It was not a question of willful neglect or gross carelessness, and the court erred in submitting it to the jury to find whether the neglect to inventory the furniture, &c., arose from the fact that it was casually forgotten or overlooked or that it was omitted under a reasonable belief that it ought not to be inventoried. The trustee was bound to know his duty as prescribed by law, and can not plead his ignorance of his duty or his own carelessness.

3. The acts of Beebe in offering to sell the oxen and in using the hay, were of such a character as to render the assignment fraudulent. The trustee had no right to make the arrangement claimed with Beebe. The charge did not meet the defendant's claim on this point.

4. The rule of damages in an action of trespass, where no special damage is laid, is the value of the property with interest from the time when it was taken. *Treat* v. *Barber*, 7 Conn., 274. *Huntley* v. *Prescott*, 15 id., 267. *Wallace* v. *Frazier*, 2 Nott & M'C., 516. *Richardson* v. *Dukes*, 4

McCord, 156.    Remunerative damages in actions for taking personal property are given only in cases where it appears, either from the declaration or from the proof, that the defendant has acted in a malicious or wanton manner.    The record discloses no such fact here.

*Belden* and *Averill*, for the plaintiff.

1. The case shows, and the court finds, that at the time of the assignment and at the time of the trial in the superior court, the court of probate for the district of Brookfield had no clerk, and had had none for six years.    The judge himself had made his own records and certified them; and the copies offered in evidence were in proper form and certified by the judge.    This is in conformity with a very common usage in this state, which has been sanctioned from time immemorial.    The objection to this evidence is merely technical, and coming so late will not be favored.

2. A copy of the records of the proceedings of the court of probate, certified by the judge of that court to be a true copy, is a copy examined and sworn to by a credible witness. Rev. Stat., tit. 1, § 134.

3. The plaintiff had entered upon his duties as trustee and had given bond to the acceptance of the court of probate, appraisers had been appointed, an inventory had been made, returned and accepted, commissioners had been appointed and had acted as such and had allowed the defendant's claim, and the plaintiff was proceeding with the settlement of the estate, when further proceedings were arrested by the suit of the defendant and his attachment of the assigned estate.    The neglect to inventory the furniture can have no important effect, as it could easily be embraced in a supplemental inventory.    At any rate, the omission can not affect the trustee's title to the oxen, which were inventoried.    It can have no effect on the assignment generally, so as to enable the court to pronounce it fraudulent and void as matter of law.    Nor from all the facts of the case, can the court so pronounce it as matter of law.    *Osborne* v. *Tuller*, 14 Conn., 529.    *Strong* v. *Carrier*, 17 id., 319.

4. It was properly left to the jury to determine, as a matter of fact, whether the various circumstances relied upon by the defendant as evidences of fraud, furnished proof of fraud sufficient to authorize the jury to find the assignment fraudulent and void. The charge in this respect was in conformity with all the decisions upon this subject in this state. See cases above cited.

5. The charge on the subject of damages was correct, and in conformity with the settled law of this state. *Denison* v. *Hyde*, 6 Conn., 508. *Linsley* v. *Bushnell*, 15 id., 226. *Huntley* v. *Bacon*, id., 267.

SANFORD, J. The first question presented on this motion regards the admissibility of the copies of record offered in evidence by the plaintiff. The objection was, as the judge remarked, " a technical one," and came " too late to be received with much favor," and if the plaintiff had not agreed to the reading of the copies subject to future objection, the judge would have been justified in deciding that the objection came too late to be listened to at all, or in postponing the trial to enable the plaintiff to procure the due authentication of the copies. But no motion for a postponement of the trial was made, the plaintiff choosing rather to stand upon his claim that the copies were admissible as they were ; so that we have only to decide whether they were authenticated as the law requires, and legally admissible in evidence or not.

The statute, provides that each court of probate shall have a clerk appointed by such court and sworn to that office; (Rev. Stat., tit. 5, § 54.)—that the clerk shall make and have the custody of the records of the court, and be the keeper of its seal; (Rev. Stat., tit. 5, § 85.)—that the record may be proved by a copy certified under the hand of the clerk and the seal of his office, and in case of the absence or inability of the clerk, by a copy examined and sworn to by credible witnesses; and that for a false certificate the clerk shall be punishable as for perjury. (Rev. Stat., tit. 1, §134.)

Dibble *v.* Morris.

Thus by strong implication is evinced the intention of the legislature to confine the power of making a copy proof of the existence and contents of a record by a mere certificate, to an officer specially appointed for that purpose, and whose fidelity is secured by his official oath and the penal sanction provided for its violation. It may be added that it seems eminently fit and proper, that the officer who alone is authorized to make and is bound to keep the record, should be the only person authorized by his signature and seal alone, to prove the existence of such record and its contents.

In this case, we think the evidence detailed in the motion shows that that there was a duly appointed and qualified clerk, and no reason is shown why the copies introduced were not authenticated by his certificate. An appointment to such an office once made continues the appointee in office until he resigns, or is removed, or superseded by the appointment of another person to the same place. The clerk is the clerk of the court, not of the particular judge by whom he is appointed. The same court continues in existence always, though the judge may be changed from year to year, and upon the coming in of a new judge, there need be neither a new appointment of the clerk, nor a new administration to him of his official oath.

It is claimed to be the settled practice in our courts, to admit copies of probate records upon certificate of the judge alone, whether there is any clerk of the court or not, and if there is, without shewing any reason for the absence of his certificate. But we are not informed that such practice has ever been sanctioned by a direct adjudication of this court, and, as it is at variance with principle and unauthorized by statute, it ought to be corrected.

Nor were these copies admissible as examined copies, for no legal evidence of their examination was produced. By the " credible witnesses" mentioned in the statute, and authorized in certain cases to verify copies of record, are doubtless intended witnesses giving testimony under the sanction of the witnesses' oath, and who may be cross-examined as to the existence of the record and the accuracy of the copy.

The defendant requested the court to charge the jury that the plaintiff's omission to inventory the household furniture, and to affix to the growing corn and potatoes inventoried an appraised value, rendered the assignment in contemplation of law fraudulent and void. That such omission unexplained affords some foundation for an inference that the assignment is only colorable and is not intended to be followed up, may be admitted, but we think there is no authority for holding that it makes the assignment "in contemplation of law fraudulent and void." It is a badge or indication of fraud, but not a conclusive one. And the jury having, under the charge of the court, found that the omission in this case was not attributable to willful neglect or gross carelessness, but to inadvertence or honest mistake, we think the inference was repelled.

The charge of the judge in regard to the assignor's possession of the property after the assignment is sanctioned by the decisions of this court in *Osborn* v. *Tuller*, 14 Conn., 529, *Strong* v. *Carrier*, 17 id., 319, and *Peck* v. *Whiting*, 21 id., 206, and is liable to no just exception.

In regard to the rule of damages, the judge charged the jury, that " in addition to the value of the property taken by the defendant and interest thereon, it would be proper for them to take into consideration the expenses necessarily attendant upon prosecuting his claim in court." The record shows that a considerable sum beyond the value of the property as laid in the declaration, was awarded to the plaintiff by the verdict, which it is fair to presume was allowed, under the charge, for the purpose of remunerating the plaintiff for his expenses in the prosecution of the suit. We think that such allowance in this case ought not to have been made, and that the charge on this point needs qualification. By a series of decisions in this state, it is settled that in actions sounding in tort, where the injury was inflicted wantonly or maliciously, the jury are at liberty to give, and it is proper for them to give, damages beyond a mere compensation for the actual loss or injury, and exemplary or vindictive in proportion to the degree of malice or wantonness evinced by the

defendant, and to increase the amount by taking into consideration the plaintiff's expenses in the litigation. *Linsley* v. *Bushnell,* 15 Conn., 236. *Huntley* v. *Bacon,* id., 267. *Beecher* v. *Derby Bridge & Ferry Co.,* 24 id., 491. We do not intend to unsettle the law as established by these decisions. But when the act which produced the injury does not appear to have been wanton or malicious, and when the parties come before the court in the character of *bona fide* claimants of property, honestly contending for their rights, vindictive or exemplary damages ought not to be allowed. See *Beecher* v. *Derby Bridge & Ferry Co.,* supra. In this case the defendant was a creditor of the assignor, who seems to have been honestly endeavoring to secure his debt by the attachment of property which had been the property of his debtor, and was in fact in his hands at the time of the attachment under circumstances well calculated to excite suspicion of the *bona fides* of the assignment, and sufficient in our judgment to exonerate the defendant from the imputation of malice or wantonness in attaching it. Had the jury been instructed that if they found the attachment wanton or malicious, then it would be proper for them to give the plaintiff the amount of his expenses in the litigation in addition to the value of the property and interest thereon, the charge would have been unexceptionable, but without that qualification it was wrong.

Upon the first point, and upon the last, the court erred, and a new trial is advised.

In this opinion the other judges concurred.

New trial advised.