## 11456

### SMOAK v. CHARLESTON COUNTY

#### (122 S. E., 862)

1. HIGHWAYS—EVIDENCE HELD TO SHOW CONTRIBUTORY NEGLIGENCE OF ONE RIDING IN SIDE CAR OF PATROL OFFICER'S MOTORCYCLE.—In an action against a county for death of one riding in a side car of a patrol officer's motorcycle, resulting from a collision with a truck left standing on a highway, evidence *held* to show contributory negligence.

2. NEGLIGENCE—STATUTE DOES NOT REQUIRE PLAINTIFF TO NEGATIVE IMPUTED NEGLIGENCE OF DRIVER OF VEHICLE.—In an action against a county for death of one riding in side car of patrol officer's motorcycle resulting from collision with truck, while statute requires plaintiff to negative in his complaint his own negligence, it does not require him to negative driver's imputed negligence.

3. HIGHWAYS—PERMISSIBLE TEMPORARY OBSTRUCTION BECOMES UNLAWFUL WHEN ALLOWED TO REMAIN LONGER THAN REASONABLE TIME.— A permissible temporary obstruction to a highway becomes unlawful when allowed to remain longer than a reasonable time without necessary precaution, and at that point duty of county authorities to remove it or guard against its consequences begins.

4. HIGHWAYS—TRUCK LEFT STANDING IN HIGHWAY HELD DEFECT.— A truck left standing in a highway where vehicles might run into it was a defect in the highway, and, if county authorities neglect their duty in removing or protecting against it county is equally liable with author.

Before RICE, J., Charleston, April Term, 1923. Reversed and remanded with direction to enter a nonsuit.

Action by E. D. Smoak, as administrator, against Charleston County. Judgment for plaintiff and defendant appeals.

---

Note: On liability of municipality for permitting obstruction to be placed in street, see notes in 19 L. R. A. (N. S.), 507; 49 L. R. A. (N. S.), 844.

*Messrs. Nathans & Sinkler* and *John I. Cosgrove,* for appellant, cite: *Contributory negligence:* 113 S. C., 45; 134 N. E., 340; 289 F. R., 948. *Notice:* 117 S. E., 533. *Dissenting opinion:* 114 S. C., 382; 118 S. C., 358. *County's obligation to keep public highway safe:* 89 S. C., 511; 105 S. C., 255; 71 S. C., 170.

*Mr. James Allan,* for respondent, cites: *Court was correct in refusing to direct a verdict:* 117 S. E., 186. *Testimony enough to go to the jury:* 117 S. E., 510. *Negligence:* 101 S. E., 286. *Common enterprise:* 78 S. C., 879. *Trespasser:* 118 S. E., 32; 117 S. E., 590. *Notice to County:* 92 S. E., 191. *Defect in road:* 72 S. E., 228; 78 S. C., 23.

April 8, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for damages on account of alleged wrongful death of the intestate, Prevost Smoak, who was killed in a collision, at night, between a motorcycle with a sidecar attachment, in which he was riding, and a Ford truck, loaded with wood, which had broken down, and had been left by the owner upon the highway, unlighted and unguarded. Verdict for the plaintiff, $4,000.00, and defendant has appealed.

The facts are as follows:

On November 19, 1921, in the forenoon, a Ford truck, loaded with wood, belonging to one Murray, broke down on a certain highway of Charleston County, and was left standing there. The truck was headed south, and was on the right side of the road. The highway was 30 feet wide, 18 feet of which was hard-surfaced. Murray was not an employee of the county. The truck was left where it broke down during the remainder of the day, Saturday, all of Saturday night, Sunday, Sunday night, and until some time in the night of Monday, unlighted and unguarded.

Prevost Smoak, the deceased, was a telephone lineman engaged upon the line which was located along the highway, not far from the disabled truck; he knew of its situation. On Monday afternoon about sundown one Holden, who was a patrol officer of the county authorities, and furnished with a motorcycle equipped with a side car passed the point where Smoak was at work, and was asked by him for a ride. Smoak invited Holden to supper with the force at their camp near by. The invitation was accepted, and after supper Holden announced his purpose to resume his patrol, looking after speeders. Smoak asked to be allowed to accompany him, and took a seat in the side car. They proceeded in the direction of Charleston, traveling at the rate of 15 to 20 miles an hour. The motorcycle was equipped with a headlight, which, owing to the unclean condition of the reflector, lighted a distance of only 10 or 15 feet ahead. They were engaged in conversation, Holden looking out for approaching cars; he testified: "I was not thinking about the truck, and when I got to myself we had run into the truck"; "that at the time of the accident he was looking at Smoak and Smoak was looking at him."

The defendant, at the proper times, made motions for nonsuit and a directed verdict, upon grounds which sufficiently appear below. They were refused.

The exceptions present the several propositions, which will be considered in order.

(1) That the motions for nonsuit and for a directed verdict should have been granted upon the ground that the evidence did not tend to show that the truck was not left in the highway by the deceased.

The "Case" contains this statement:

"It appeared that on Saturday morning, the 19th of November, 1921, Mack Murray, the owner of a Ford truck, loaded with wood, was driving on the cement road in St. Andrews Parish to the City of Charleston, and, when about

three miles from the city, the truck broke down, and he left it on the side of the road.".

This disposes of the appellant's first proposition.

(2) That the motions for nonsuit and for a directed verdict should have been granted upon the ground that the evidence showed that the collision was due to the contributory negligence of the deceased.

It appears beyond dispute that Smoak, the deceased, was drinking; that he entered a conveyance in which he had no right to ride, for his own pleasure; that he knew that the motorcycle was equipped with a defective headlight; that at night, or even in the daytime, it was not at all a safe conveyance; that he knew of the stranded truck being in the highway and on the side he was traveling; that he was in conversation with Holden as they sped along; that he knew that the conversation necessarily diminished Holden's vigilance; and that at the moment of the collision it had actually diverted his attention.

It is impossible to conclude that any other inference can be drawn from these facts than that his conduct brings the case within the familiar definition of contributory negligence.

(3) That the evidence showed that the deceased and Holden were engaged in a common enterprise; that the negligence caused the collision; that the negligence of Holden is imputable to the plaintiff; and that for these reasons the Circuit Judge was in error in refusing the motions for a nonsuit and directed verdict and in charging the jury that there was no evidence of a common enterprise.

Inasmuch as the answer sets up no such defense as is claimed in this proposition, we do not deem it necessary or proper to enter upon the interesting questions raised. While the statute requires the plaintiff in such actions to negative in his complaint his own contributory negligence, it does not require him to negative the im-

puted negligence of the driver of the vehicle, which is an affirmative defense to be pleaded by the defendant.

(4) That the motions for a nonsuit and a directed verdict should have been granted upon the ground that there was no evidence tending to show that the county authorities had received notice of the obstruction of the highway by the presence of the truck.

Many kinds of temporary obstructions to a highway are permissible, and the obstruction in this case is an apt illustration; but the permissibility is limited by the duty of removing them within a reasonable time and of taking such precautions against collisions in the meantime as prudence and the safety of travelers would suggest. If the obstruction should be placed by a person other than the county authorities, and he should exceed the limit of permission, his liability would not absolve the county authorities, if they were advised of such condition, or with the exercise of ordinary care would have ascertained it. A permissible, temporary obstruction becomes an unlawful obstruction when it has been allowed to remain longer than a reasonable time for its removal or without the necessary precautions. At that point the duty of the county authorities to remove it or guard against its consequences begins, as it exists in reference to all other defects. We know of no law which would excuse a county upon the ground that it did not know of a defect, when it appears that proper diligence would have discovered it. 13 R. C. L., 390.

(5) That the Circuit Judge committed error in charging the jury that a truck loaded with wood left standing in the highway where vehicles might run into it was a defect in the highway.

The ruling of the Circuit Judge is sustained by *Duncan v. Greenville,* 71 S. C., 170; 50 S. E., 776. *Irvine v. Greenwood,* 89 S. C., 511; 72 S. E., 228; 36 L. R. A. (N. S.), 363. *Lipford v. Construction Company,* 118 S. C., 358; 110 S. E., 405. *Linsley v. Bushnell,* 15 Conn., 225;

38 Am. Dec., 79. The fact that in each of these cases the author of the obstruction was held liable does not affect the principle, for, if the county authorities should neglect their duty in removing or protecting against the obstruction, the county is equally liable with the author.

(6) That the motion for nonsuit. and a directed verdict should have been granted upon the ground that the deceased was a trespasser, unlawfully using the property of the county, in the use of which he was injured. As this proposition is not discussed in the argument of appellant's counsel, we decline to consider it.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court, with directions to enter a nonsuit under Rule 27.

MESSRS. JUSTICES WATTS, FRASER and MARION concur. MR. CHIEF JUSTICE GARY did not participate.